IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

```
_____
                               )
JASON E., by and through his   )
parent and best friend, LINDA  )
E., and LINDA E. individually, )
                               )
         Plaintiffs,           )
                               )
     vs.                       )   Civ. No. 12-00354 ACK-BMK
                               )
DEPARTMENT OF EDUCATION, STATE )
OF HAWAII, KATHRYN MATAYOSHI,  )
in her official capacity as the)
Superintendent and Chief       )
Executive Officer of the       )
Department of Education, State )
of Hawaii, HAWAII TECHNOLOGY   )
ACADEMY GOVERNING SCHOOL BOARD,)
MICHAEL FINDLEY, in his capacity)
as the chairperson of the Hawaii)
Technology Academy Governing   )
School Board, HAWAII TECHNOLOGY)
ACADEMY, and LEIGH FITZGERALD, )
in her official capacity as the)
Executive Director of Hawaii   )
Technology Academy,            )
                               )
         Defendants.           )
_____)
```

<u>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' THIRD
AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF OR, IN
THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT</u>

<u>PROCEDURAL BACKGROUND</u>

On June 20, 2012, Jason E. ("Student"), by and through

his mother Linda E. ("Parent") (collectively "Plaintiffs"), filed

a Complaint against the State of Hawaii's Department of Education

("DOE"). (Doc. No. 1.) Plaintiffs' Complaint sought, inter alia,

the reversal of an Administrative Hearing Officer's May 21, 2012 decision regarding an Individualized Education Program ("IEP") set for Student's 2012-2013 school year. (Id.) Under the Individuals with Disabilities Education Act ("IDEA"), a qualified disabled child is entitled to receive an IEP that offers a Free Appropriate Public Education ("FAPE").

On October 1, 2012, the DOE filed a Motion to Dismiss Plaintiffs' Complaint. (Doc. No. 19.) On February 14, 2013, the Court issued an Order Granting the DOE's Motion to Dismiss ("Feb. 14 Order"). (Doc. No. 31.) In the Feb. 14 Order, the Court concluded that Plaintiffs' Complaint for relief under the IDEA was moot because Parent had executed a Revocation of Consent Form indicating that she no longer wanted Student to receive IDEA special education services. Feb. 14 Order at 17-23. However, in an abundance of caution, the Court allowed Plaintiffs to amend their Complaint, reasoning as follows:

> [I]t is possible that Parent has an argument that [the DOE] should have honored the Revocation of Consent Form on June 15, 2012 by treating Student as a general education student and continuing his enrollment at [Hawaii Technology Academy ("HTA")]. Instead of asking for a mandate for special education services, Parent could adjust her claim to reflect her intent for Student to be treated as a general education student at HTA.

Id. at 25. Further, the Court "note[d] that, on the other hand, HTA has submitted a letter dated February 6, 2013, attached hereto as Exhibit A, setting forth the school's reasons why

2

Student should not remain at HTA as a general education student."
Id.

Plaintiffs filed a First Amended Complaint on March 19, 2013, and subsequently filed a Second Amended Complaint on May 10, 2013. (Doc. Nos. 33 & 38.)

On August 28, 2013, Plaintiffs filed a Motion to Request Court to Hear Additional Evidence. (Doc. No. 49.) On October 2, 2013, the Court issued an Order denying this motion and staying the case ("Oct. 2 Order"). (Doc. No. 62.) The Court stayed the case because the parties were involved in a proceeding in the Family Court of the First Circuit of the State of Hawaii ("Family Court"). See Oct. 2 Order at 9-12.

On December 9, 2013, the Court issued a minute order lifting the stay because the case in the Family Court had been dismissed. (Doc. No. 70.)

On May 7, 2014, Plaintiffs filed the operative Third Amended Complaint against the DOE, Kathryn Matayoshi, in her official capacity as the Superintendent and Chief Executive Officer of the DOE, HTA Governing School Board, Michael Findley, in his capacity as the chairperson of HTA Governing School Board, HTA, and Leigh Fitzgerald, in her official capacity as the Executive Director of HTA (collectively "Defendants"). (Doc. No. 81.) On June 2, 2014, Defendants filed an Answer. (Doc. No. 84.)

On July 31, 2014, Defendants filed the instant

Motion to Dismiss Plaintiffs' Third Amended Complaint for Declaratory and Injunctive Relief or, in the Alternative, Motion for Summary Judgment. (Doc. No. 85.) On October 20, 2014, Plaintiffs filed an Opposition to Defendants' Motion. (Doc. No. 88.)

A hearing regarding Defendants' Motion was held on November 10, 2014.[1]

**FACTUAL BACKGROUND**

At the time of this proceeding, Student is 13 years old. (Third Am. Compl. ¶ 3.) Student was born with Down Syndrome and a heart condition. (Mot. Ex. 1 at 4.) He has been diagnosed with Attention Deficit Hyperactivity Disorder. (Id.) He also has mild bilateral hearing loss and wears corrective lenses to read. (Id.) From 2008-2012, Student received IDEA special education services. (Id. at 6-29; Third Am. Compl. ¶ 11.)

For the school years 2008-2012, Student attended Hawaii Technology Academy, a DOE Public Charter School.[2] (Mot. Ex. 1 at 6-29; Third Am. Compl. ¶ 11.) HTA educates students using a "hybrid" model of face-to-face classes meeting three days a week combined with a computer-based education program called

---

[1]Defendants did not file a reply in support of the instant Motion.

[2]Public Charter Schools are publicly funded institutions regulated by the Hawaii Board of Education; in addition to general education, these schools provide IDEA services to qualified children. (Mot. Ex. 1 at 4 n. 2.)

"Online School." (Mot. Ex. 1 at 4-5.) The DOE implemented an IEP for Student at HTA for every school year from 2008-2012.[3]

On May 19, 2011, Student's IEP team issued an IEP that recommended placing Student in a full-time face-to-face instruction program instead of HTA. (Id. at 21-22.) Parent objected to the IEP's recommendation to remove her son from HTA. (Id. at 26.) On July 27, 2011, Plaintiffs filed a Request for Impartial Due Process Hearing to contest the May 19, 2011 IEP. (Id. at 2.) The Administrative Hearing Officer ("AHO") held a hearing over the course of five days and issued her decision on May 21, 2012. (Id. at 2-3.) The AHO concluded that (1) the May 19, 2011 IEP offered Student a FAPE at the placement of Heeia Elementary, and (2) HTA is not an appropriate placement because Student "requires a face-to-face full time program" instead of the hybrid program offered at HTA. (Id. at 41-43.)

On May 31, 2012, Leigh Fitzgerald, HTA's Executive Director, sent Parent a letter informing her that HTA will be implementing the May 19, 2011 IEP and advising her to enroll Student at Heeia Elementary, Student's geographic home school. (Id. Ex. 2.) Also on May 31, 2012, Dean Tsukada, District Education Specialist ("DEC") for the Leeward School District,

_____

[3]Student attended HTA for the 2011-2012 school year under the "stay put" provision of the IDEA, which allowed Student to stay in his current educational placement at HTA while Parent appealed the May 19, 2011 IEP. See 20 U.S.C. § 1415(j).

sent a memo to Rebecca Rosenberg, DEC for the Windward School District, advising her of Student's impending enrollment at Heeia Elementary and requesting a "transition meeting" to share information regarding Student's needs. (Id. Ex. 3.)

On June 7, 2012, Rosenberg sent a letter to Parent outlining Student's Extended School Year ("ESY") services and stating that, pursuant to the AHO's decision, ESY services would be conducted in the Windward School District beginning on June 12, 2012. (Id. Ex. 4.)

On June 12, 2012, Fitzgerald sent a letter to Parent stating that Student would be released from HTA on June 18, 2012, because of the AHO's May 21, 2012 decision. (Id. Ex. 5.)

On June 15, 2012, Parent signed a "Revocation of Consent for Continued Provision of Special Education and Related Services" ("Revocation of Consent Form"). (Id. Ex. 6.) This form stated that (1) Parent wished to "revoke my consent to the continued provision of special education and related services to my child," (2) the DOE will "no longer be required to have an . . . [IEP] for my child," and (3) Plaintiffs "will no longer be entitled to the procedural safeguards established in the [IDEA]."[4] (Id.)

---

[4] The procedural safeguards in the IDEA include the "stay put" provision; Parent's Revocation of Consent also appears to have terminated "stay put" under the IDEA. Oct. 2 Order at 5 n. 6; see also 20 U.S.C. § 1415.

Parent also sent an email on June 15, 2012, to HTA stating that she had delivered the Revocation of Consent Form. Oct. 2 Order at 5. In her email, Parent stated: "I agree that the result of my revocation for continued special education and related services described above will be that an IEP will no longer be implemented nor required." Id. According to the email, Parent believed that Student would "remain a registered and enrolled general education student at [HTA]." Id. This email also contains a paragraph where parent states that the IDEA gives Parent "unilateral authority to refuse special education and related services, including the related issue of revocation of consent for the continued provision of special education and related services." Id. at 5-6.

On June 18, 2012, the HTA school-wide withdrawal date for students, HTA withdrew Student from enrollment at the school. Id. at 6.

On June 19, 2012, HTA issued a Prior Written Notice ("PWN") to Parent stating that Student was "no longer eligible for special education and related services." (Mot. Exs. 7-8.) The PWN explained that Parent had the option of receiving special education services under the most recent IEP, but that services would not be provided because "parent has requested that all services be revoked." (Id.)

In an exchange of letters between Parent and the

7

DOE, HTA stated it withdrew Student on June 18, 2012 "as instructed by the hearing officer's ruling" and because the Revocation of Consent Form was not effective until Parent received the June 20, 2012 PWN. Oct. 2 Order at 6. HTA stated that Parent could apply to enroll Student as a general education student for the upcoming year. Id. at 6-7. Parent applied to enroll Student at HTA for the 2012-2013 school year, but Student was placed on the waiting list. Id. at 7. Student was not re-admitted to HTA for the 2012-2013 school year; instead, Parent homeschooled Student. Id.

On June 20, 2012, Plaintiffs filed their original Complaint in this action. The Court issued its Order regarding the DOE's Motion to Dismiss on February 14, 2013.

On March 4, 2013, the DOE filed a Petition for Family Supervision in the Family Court. Oct. 2 Order at 7. That petition alleged, inter alia, that Parent had not been providing Student an appropriate education.

On March 13, 2013, the DOE received an "Exceptions to Compulsory Education" form from Parent, which requested that Student be withdrawn from the 2012 school year because Parent was homeschooling him.[5/] (Mot. Ex. 9.)

---

[5/]Parent dated this form June 18, 2012. (Mot. Ex. 9.) According to Defendants, "Parent revealed in her deposition that she dated her signature on the Form as June 18, 2012 to comport with Student's departure from HTA but that she actually signed

(continued...)

On March 19, 2013, and May 10, 2013, respectively, Plaintiffs filed their First and Second Amended Complaints.

On November 25, 2013, the Family Court Petition was dismissed.[6] (See Doc. No. 70.)

On May 7, 2014, Plaintiffs filed the operative Third Amended Complaint.

At the Nov. 10 hearing, the Court learned that several important events have occurred since the Third Amended Complaint was filed. Specifically, in July 2014, Student was enrolled at HTA as a general education student. On September 16, 2014, IDEA special education services were implemented for Student with an IEP meeting scheduled for October 21, 2014. However, on the eve of the October 21 meeting, Parent again revoked her consent to IDEA services. Consequently, at the October 21 meeting, Student's special education services under § 504 of the Rehabilitation Act were discussed.

At present, Student is enrolled as a sixth grade general education student at HTA despite the fact that he is

---

[5](...continued)
the document in March 2013." (Id. at 9.) The Court notes that Defendants have not attached a copy of the relevant portion of Parent's deposition transcript to the instant Motion.

[6]Evidently, the Family Court Petition was dismissed because Parent stated before the Family Court that she was homeschooling Student. (Rosenberg Decl. ¶ 6.) According to Defendants, the Family Court cautioned Parent that any attempt to reenroll Student in a DOE school may result in the filing of a new petition. (Id. ¶ 7.)

chronologically a ninth grader and academically performs at the level of a kindergartner or first grader.[7] Evidently, Student is receiving certain special education services including 1:1 instruction at HTA through a § 504 plan.[8]

Defendants stated at the Nov. 10 hearing that Student is aggressive, abusive, non-complaint, disruptive, and experiences toileting issues. Defendants expressed concern as to how HTA will provide for the safety and academic success of other students given Student's behaviors. Defendants further stated that parents of other HTA students have expressed concern that Student is interfering with classroom instruction and that, as a consequence, these parents may withdrew their children from HTA. Defendants asserted that HTA cannot explain the situation to the parents because of confidentiality issues.

According to Defendants, HTA is doing everything it can to provide Student a § 504 FAPE, but that it would be in the Student's best interest to receive the full panoply of special education services under the IDEA. The Court notes that Parent

---

[7]At the Nov. 10 hearing, Defendants stated that HTA placed Student in a sixth grade classroom as a "compromise" and that the school had to account for Student's physical size, which is commensurate with his age, and aggressive behavior.

[8]Defendants have not submitted any declarations or other evidence in support of this statement; however, Plaintiffs, at the Nov. 10 hearing, did not dispute that Student is currently receiving certain special education services including 1:1 instruction at HTA through a § 504 plan.

has once again revoked her consent to IDEA services and, moreover, it appears that, notwithstanding the revocation, Student is receiving various special education services including 1:1 instruction through a § 504 plan.

When questioned by the Court as to what the ideal situation would be for Student, Defendants stated that their "hands are tied" because state law requires HTA to enroll any applicant to the school if space is available. Specifically, H.R.S. § 302D-34(b)(2) makes it mandatory for "start-up" public charter schools like HTA to enroll students "who submit an application, unless the number of students who submit an application exceeds the capacity of a program, class, grade level, or building." Id. Notwithstanding this statute, Defendants expressed concern as to how HTA will provide viable instruction to Student given that the AHO previously determined that HTA was unsuitable even with full IDEA services and that Student needs a face-to-face, five-day a week program, instead of the hybrid, three-day a week program offered by HTA.

In short, HTA, like the AHO, believes that placing Student at the school as a general education student is not in the Student's best interest.[9] See Feb. 14 Order at 24.

_____

[9]In her May 21, 2012 decision, the AHO found that Kathy English, Parent's "Advocate" from the Hawaii Disability Rights Center, observed that HTA was not an inappropriate placement for Student "because his behaviors were interfering with his ability
(continued...)

11

**I.      Motion to Dismiss for Lack of Subject-Matter
         Jurisdiction**

Federal Rule of Civil Procedure ("Rule") 12(b)(1)
authorizes the Court to dismiss a complaint for "lack of subject-
matter jurisdiction." Because mootness is an issue pertaining to
the federal court's subject-matter jurisdiction under Article
III, it is properly raised in a motion to dismiss under Rule
12(b)(1), not Rule 12(b)(6). <u>White v. Lee</u>, 227 F.3d 1214, 1243
(2000); <u>Kingman Reef Atoll Investments v. U.S. Dep't of Interior</u>,
195 F.Supp.2d 1178, 1182 n.2 (D. Haw. 2002).

A motion to dismiss for lack of subject matter
jurisdiction that is properly raised may either (1) "attack the
allegations of the complaint as insufficient to confer subject
matter jurisdiction on the court" ("facial attack") or (2) "may
attack the existence of subject matter jurisdiction in fact"
("factual attack"). <u>Malama Makua v. Rumsfeld</u>, 136
F.Supp.2d 1155, 1159 (D. Haw. 2001); <u>White</u>, 227 F.3d at 1242.
For a facial attack on subject matter jurisdiction, "all
allegations of material fact are taken as true and construed in
the light most favorable to the nonmoving party." <u>Malama</u>, 136 F.
Supp. 2d at 1159. On the other hand, for a factual attack, "no

_____

[9]/(...continued)
to learn." (Mot. Ex. 1 at 43.) At the Nov. 10 hearing, Plaintiffs
contested this finding and argued that English's testimony was
"taken out of context."

presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the existence of subject matter jurisdiction in fact." Id. at 1159-60 (citing Thornhill Publ'g Co. v. General Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979)).

"Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." Robinson v. U.S., 586 F.3d 683, 685 (9th Cir. 2009). Additionally, once the party bringing the Rule 12(b)(1) motion presents evidence or other affidavits before the court challenging jurisdiction, the party opposing the motion must present affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). Furthermore, when considering a Rule 12(b)(1) motion to dismiss, the district court may "hear evidence regarding jurisdiction" and "resolve factual disputes where necessary." Robinson v. U.S., 586 F.3d 683, 685 (9th Cir. 2009).

In this case, Defendants bring a factual challenge to the Court's subject matter jurisdiction, and attach two declarations and nine exhibits to the instant Motion. See Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004) (attack on subject matter jurisdiction is considered factual if the attack relies on extrinsic evidence and does not rely solely

on the pleadings).

## II.        Motion for Summary Judgment

Under Rule 56, a party may move for summary judgment on any claim or defense, or part of a claim or defense. Summary judgment "should be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" <u>Maxwell v. Cnty. of San Diego</u>, 697 F.3d 941, 947 (9th Cir. 2012) (quoting F.R.C.P. 56(a)). Under Rule 56, a "party asserting that a fact cannot be or is genuinely disputed must support the assertion," either by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." F.R.C.P. 56(c)(1).

The substantive law determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "The mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007) (emphasis in original).

A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." United States v. Arango, 670 F.3d 988, 992 (9th Cir. 2012). Conversely, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott, 550 U.S. at 380.

The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact. Avalos v. Baca, 596 F.3d 583, 587 (9th Cir. 2010).[10] If the moving party satisfies its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Sluimer v. Verity, Inc., 606 F.3d 584, 587 (9th Cir. 2010). The nonmoving party must present evidence of a "genuine issue for trial," F.R.C.P. 56(e), that is "significantly probative or more than merely colorable." LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1137 (9th Cir. 2009) (citation omitted). Summary judgment will be granted against a party who fails to demonstrate facts sufficient to establish "an element essential to that party's case and on which that party will bear the burden

---

[10] When the party moving for summary judgment would bear the burden of proof at trial, the movant must present evidence which would entitle it to a directed verdict if the evidence were to go uncontroverted at trial. Miller v. Glenn Miller Prods., 454 F.3d 975, 987 (9th Cir. 2006) (citation omitted). In contrast, when the nonmoving party would bear the burden of proof at trial, the party moving for summary judgment may meet its burden by pointing out the absence of evidence from the nonmoving party. Id. (citation omitted).

of proof at trial." <u>Parth v. Pomona Valley Hosp. Med. Ctr.</u>, 630 F.3d 794, 798-99 (9th Cir. 2010) (citation omitted).

When evaluating a motion for summary judgment, the court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007). The court may not, however, weigh conflicting evidence or assess credibility. <u>In re Barboza</u>, 545 F.3d 702, 707 (9th Cir. 2008).[11/] Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied. <u>Anderson</u>, 477 U.S. at 250-51.

## III.       Special Consideration for Pro Se Litigants

Parent represents herself and her son pro se.[12/] The Ninth Circuit has cautioned that pro se litigants must be treated with liberality. <u>See</u> <u>Waters v. Young</u>, 100 F.3d 1437, 1441 (9th

---

[11/]Nonetheless, a "conclusory, self-serving affidavit" that lacks detailed facts and supporting evidence may not create a genuine issue of material fact. <u>F.T.C. v. Neovi, Inc.</u>, 604 F.3d 1150, 1159 (9th Cir. 2010). Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Scott</u>, 550 U.S. at 380. "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." <u>Yeager v. Bowlin</u>, 693 F.3d 1076, 1080 (9th Cir. 2012).

[12/]The Court notes that at the Nov. 10 hearing Parent stated that although she drafted the Third Amended Complaint, she consulted with attorneys to help her prepare it.

16

Cir. 1996). At the same time, however, the Ninth Circuit has held that "an ordinary pro se litigant, like other litigants, must comply strictly with the summary judgment rules."[13/] <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150 (9th Cir. 2010) (citing <u>Bias v. Moynihan</u>, 508 F.3d 1212, 1219 (9th Cir. 2007)). Because trial courts "generally do not intervene to save litigants from their choice of counsel . . . [a] litigant who chooses *himself* as legal representative should be treated no differently." <u>Jacobsen v. Filler</u>, 790 F.2d 1362, 1364-65 (9th Cir. 1986) (emphasis in original). District courts therefore have no duty "to search for evidence that would create a factual dispute." <u>Bias</u>, 508 F.3d at 1219.

## **DISCUSSION**

Defendants argue that Plaintiffs' Third Amended Complaint is moot. Alternatively, Defendants argue that Plaintiffs' claims in the Third Amended Complaint are ripe for summary adjudication. (Mot. at 18.) The Court will address these arguments in turn.

**I.        Whether Plaintiffs' Third Amended Complaint is Moot**

Under Article III of the Constitution, federal courts only have jurisdiction over "actual, ongoing controversies."

---

[13/]The Court notes that pro se prisoners are afforded more leniency regarding the standard for summary judgment. <u>See</u> <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150 (9th Cir. 2010). However, Plaintiffs are not prisoners representing themselves pro se.

Honig v. Doe, 484 U.S. 305, 317 (1988). "A party must maintain a live controversy at all stages of review, not simply at the date the action is initiated." Dep't of Educ., State of Hawaii v. Rodarte ex rel. Chavez, 127 F.Supp.2d 1103, 1112 (D. Haw. 2000) (citing Doe v. Madison Sch. Dist. No. 321, 177 F.3d 789, 797 (9th Cir. 1999) (en banc)); accord Honig, 484 U.S. at 317. "If an action or claim loses its character as a live controversy, then the action or claim becomes 'moot,' and [courts] lack jurisdiction to resolve the underlying dispute." Madison, 177 F.3d at 797. "Whether a live controversy exists depends on whether [the court] can grant effective relief in the event that [the court] decide[s] the matter on the merits." Indep. Living Center of Southern Cal. v. Maxwell-Jolly, 590 F.3d 725, 727 (9th Cir. 2009) (internal quotation marks omitted).

In the Third Amended Complaint, Plaintiffs seek various forms of relief. Among other things, Plaintiffs request "a preliminary and permanent injunction to return [Student] to full enrollment at HTA." (Third Am. Compl. at 16.) Plaintiffs further request a declaratory judgment "that the actions of [] Defendants set forth in this [] Case constituted violations of the Constitution, a deprivation of civil rights pursuant to 42 U.S.C. § 1983 et seq.; and violations of the IDEA, Section 504, and Title II of the ADA; and Hawaii anti-discrimination and charter school laws." (Id. at 14-15.)

Because the Third Amended Complaint is far from clear, the Court, at the Nov. 10 hearing, directly questioned Plaintiffs as to what relief they are seeking. Plaintiffs responded that they want Student to receive a Free Appropriate Public Education at HTA as a general education student.[14/]

It appears that Defendants have provided such relief. Specifically, in July 2014, HTA enrolled Student at the school as a general education student. Further, on September 16, 2014, HTA instituted special education services for Student with an IEP meeting scheduled for October 21, 2014. However, shortly before this meeting was set to take place, Parent once again revoked her consent to IDEA services. As a result, the October 21 meeting was used to discuss Student's services under § 504 of the Rehabilitation Act. Currently, Student is enrolled at HTA as a

_____

[14/]At the Nov. 10 hearing, Plaintiffs also requested that Student be provided speech therapy services under § 504. However, the Court need not consider this request because it was not pled in the Third Amended Complaint. Moreover, Plaintiffs have not provided any evidence as to why Student needs speech therapy services.

Plaintiffs further requested that the Court issue an order that HTA must abide by the terms of the U.S. Department of Education, Office of Civil Right's ("OCR") April 19, 2012 "Resolution Agreement." That agreement provides that under certain circumstances a HTA educational aide will escort Student to designated "pick-up" and "drop-off" locations. At the Nov. 10 hearing, Plaintiffs stated that a new agreement regarding this issue has been formulated, which would appear to amend or supersede the April 19 OCR agreement. Thus, it appears that Plaintiffs' request is moot. If Parent believes that the aforementioned agreements are insufficient to meet Student's § 504 needs, the parties should meet to resolve the same.

general education student with the school endeavoring to provide Student a § 504 FAPE through, among other things, 1:1 instruction.[15/] While Plaintiffs argue that HTA is not providing sufficient special education services[16/]; such an argument is unavailing given that HTA has attempted to provide Student with the more robust services of the IDEA (which includes the implementation of an IEP) and that Parent has voluntarily elected to forgo these services by revoking IDEA consent.

As a final matter, the Court notes that Plaintiffs' Third Amended Complaint can avoid dismissal if an exception to the mootness doctrine applies. The Court has described those exceptions as follows:

> First, there is an exception for cases that are capable of repetition while evading review. This exception applies only in exceptional circumstances. To fit the exception, "a controversy must meet two requirements: (1) the challenged action was in duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." [Public Utilities Com'n of State of Cal. v. F.E.R.C., 100 F.3d 1451, 1459 (9th Cir. 1996)]. The second exception exists when a party voluntarily ceases its allegedly illegal conduct and there is a reasonable expectation that the wrong will be repeated. [Doe v. Madison Sch.

_____

[15/]See footnote 8 supra.

[16/]The Court notes that Parent has previously submitted an Exceptions to Compulsory Education form indicating that she intended to homeschool Student for the 2012 school year.

> Dist. No. 321, 177 F.3d 789, 799 (9th Cir.
> 1999)]. The third exception bars a finding of
> mootness if a petitioner would suffer
> "collateral legal consequences" if the
> [challenged] actions [] were allowed to
> stand. Id.

Browell v. Lemahieu, 127 F.Supp.2d 1117, 1128 (D. Haw. 2000).

As will be discussed in more detail below, Plaintiffs' primary claim is that Defendants failed to honor Parent's June 15, 2012 Revocation of Consent Form and email by continuing Student's enrollment at HTA as a general education student. Plaintiffs appear to argue that the first and second exceptions to the mootness doctrines are applicable as Student could regain eligibility for IDEA special education services, Parent could initially give permission and then later revoke her consent for Student to receive those services, and Defendants could then fail to honor Parent's intent for Student to remain as a general education student at HTA. (See Third Am. Compl. ¶ 37.) While the first and second steps in this scenario have occurred since the filing of the Third Amended Complaint, the final step has not: HTA has kept Jason E. as a general education student after Parent revoked her IDEA consent. As to the third exception, "Plaintiff[s] [do] not argue, and this Court cannot fathom, that any legal consequences would result from" Plaintiffs' Third Amended Complaint being held moot. Id. Thus, none of the above exceptions to the mootness doctrine apply to save Plaintiffs' Third Amended Complaint.

In sum, because Student is currently enrolled at HTA as a general education student and because it appears that HTA has endeavored to provide Student a Free Appropriate Public Education,[17] the Court concludes that Plaintiffs have received the relief that they seek. Thus, a live controversy does not exist in this case and, therefore, Plaintiffs' Third Amended Complaint is moot.[18] See Maxwell-Jolly, 590 F.3d at 727.

## II. Whether Plaintiffs' Claims in the Third Amended Complaint Are Ripe for Summary Adjudication

For two reasons, the Court agrees with Defendants' alternative argument that Plaintiffs' claims are ripe for summary adjudication. First, as discussed above, it appears that the relief requested by Plaintiffs in connection with the claims in the Third Amended Complaint has already been provided. Second, as discussed directly below, Plaintiffs have not submitted sufficient argument or evidence in support of these claims.

### A. "Failure to Honor" Claims

---

[17] The Court notes that Plaintiffs have not produced any evidence indicating that a § 504 FAPE has not been provided to Student.

[18] This Court notes two federal court decisions holding that a parent's revocation of consent for IDEA services does not eliminate the broader protections provided by the Rehabilitation Act and Title II of the ADA. See Kimble v. Douglas County Sch. Dist. RE-1, 925 F.Supp.2d 1176, 1182-85 (D. Co. 2013) and D.F. ex rel. L.M.P. v. Leon County School Bd., No. 4:13cv3-RH/CAS, 2014 WL 28798, at *2-3 (N.D. Fla. Jan. 2, 2014). Under the Kimble and Leon decisions, it appears any need for this suit does not exist since § 504 and Title II of the ADA provide Plaintiffs a vehicle through which to seek special education services.

The vast majority of Plaintiffs' claims in the Third
Amended Complaint are based on Defendants' alleged failure to
honor Parent's June 15, 2012 Revocation of Consent Form and email
by continuing Student's enrollment at HTA as a general education
student.[19] (See Third Am. Compl. ¶¶ 22-38.) Although Plaintiffs
assert that such conduct violated, inter alia, the First, Fifth,
and Fourteenth Amendments to the U.S. Constitution, § 504, Title
II of the ADA, and state anti-discrimination and public charter
school laws; Plaintiffs fail to explain how these authorities
support their assertion. It appears that the only authority that
has addressed this issue is the United States Department of
Education. United States DOE regulations to the IDEA provide that

> [o]nce a parent revokes consent for special
> education and related services under §
> 300.300(b), the child is a general education
> student. Consequently, the child may be
> placed in any classroom where other general
> education students are placed.

Assistance to States for the Education of Children with
Disabilities and Preschool Grants for Children with Disabilities,
73 Fed. Reg. 73006-01, 73013 (emphasis added). As shown, these
regulations do not expressly state that, after a parent revokes
IDEA consent, a disabled student must remain at the *same* school
as a general education student; rather, the regulations leave

---

[19] The Court again notes that Parent sent the DOE an
Exceptions to Compulsory Education form, which requested that
Student be withdrawn from the 2012 school year because Parent
intended to homeschool him.

open the possibility that a student may be placed in a *different* school as a general education student.

Accordingly, it appears that Plaintiffs' "failure to honor claims" are without merit.

### B. Remaining Claims

In addition to their "failure to honor" claims, Plaintiffs assert several other claims under § 504, Title II of the ADA, Hawaii anti-discrimination and public charter school laws, and the First, Fifth, and Fourteenth Amendments to the U.S. Constitution.

### 1. Claims Under § 504 and Title II of the ADA

"While the IDEA focuses on the provision of appropriate public education to disabled children, the Rehabilitation Act of 1973 more broadly addresses the provision of state services to disabled individuals." <u>Mark H. v. Lemahieu</u>, 513 F.3d 922, 929 (9th Cir. 2008). Section 504 of the Rehabilitation Act provides that no disabled individual "shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 29 U.S.C. § 794(a). Section 504 further defines "program or activity" as "all of the operations of . . . a local educational agency," among other entities. <u>Id.</u> § 794(b)(2)(B).

"[T]he focus of the prohibition in § 504 is whether disabled persons were denied meaningful access to state-provided services." Mark H., 513 F.3d at 937. Section 504 "require[s] *reasonable* modifications necessary to correct for instances in which qualified disabled people are prevented from enjoying 'meaningful access' to a benefit because of their disability." Id. at 937-38 (emphasis in original).

Furthermore, the regulations implementing § 504 require that school districts "provide a [FAPE] to each qualified handicapped person who is in the [district's] jurisdiction." 34 C.F.R. § 104.33(a). Although both the IDEA and § 504 require the provision of a FAPE, "FAPE under the IDEA and FAPE as defined in the Section 504 regulations are similar but not identical." Mark H., 513 F.3d at 933. "[U]nlike FAPE under the IDEA, FAPE under § 504 is defined to require a comparison between the manner in which the needs of disabled and non-disabled children are met, and focuses on the 'design' of a child's educational program." Id.

One way to meet the FAPE requirement of § 504 is to implement an IEP that provides a FAPE under the IDEA; however, a plaintiff "may not obtain damages simply by proving that the IDEA FAPE requirements were not met." Id. The FAPE requirement in a § 504 action means that "school districts need only design education programs for disabled persons that are intended to meet

their educational needs to the *same* degree that the needs of nondisabled students are met, not more." Id. at 936-97 (emphasis in original).

Like the Rehabilitation Act, the ADA is a broad anti-discrimination statute that applies to disabled students in public schools. See 42 U.S.C. § 12101 et seq. Title II of the ADA prohibits discrimination by "exclu[sion] from participation in or [denial of] the benefits of the services, programs, or activities of a public entity." Id. § 12132. Because Title II of the ADA and § 504 involve the same substantive standards, courts analyze these statutes together. See K.M. ex rel. Bright v. Tustin Unified Sch. Dist., 725 F.3d 1088, 1098 (9th Cir. 2013) ("[W]e have discussed the close relationship between Section 504 and Title II of the ADA. Congress used the earlier-enacted Section 504 as a model when drafting Title II. We have observed on occasion that there is no significant difference in the analysis of rights and obligations created by the two Acts.") (internal quotation marks and citations omitted).

"[T]o state a claim under [§ 504 of] the Rehabilitation Act, a plaintiff must allege that '(1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance.'" O'Guinn v. Lovelock Correctional Center, 502 F.3d

1056, 1060 (9th Cir. 2007) (quoting <u>Duvall v. County of Kitsap</u>, 260 F.3d 1124, 1135 (9th Cir. 2001)).

The parties do not appear to dispute that Student is disabled within the meaning of § 504, he is otherwise qualified to be a public student at HTA, and HTA receives federal financial assistance. Thus, the only issue is whether the third element is satisfied. Plaintiffs appear to argue that Defendants denied Student the benefits of HTA by reason of his disability in two ways. First, Plaintiffs appear to claim that Defendants have failed to provide Student certain "reasonable accommodations" including the components of the April 19, 2012 OCR agreement, "preferential seating," "aide for [Student] to participate in field trips" and "walk from car to classroom," and services to help Student "communicative effectively in [the] classroom." (<u>See</u> Opp. at 4-5.) Second, Plaintiffs appear to claim that Defendants have failed to design and implement an education plan or program that provides Student a FAPE. (<u>See</u> <u>id.</u> at 3.)

Regarding the first claim, the Court has previously determined that the April 19, 2012 OCR agreement has been amended or superseded by a new agreement. <u>See</u> footnote 14 <u>supra</u>. Plaintiffs have not produced any evidence that HTA has failed to comply with the terms of the new agreement. As to the remainder of the accommodations listed above, Plaintiffs have not submitted any affidavits, declarations, or other evidence indicating why

Student requires these accommodations. Instead, Plaintiffs rely entirely on Parent's conclusory statements in her declarations and in the Opposition brief that these accommodations are reasonable and should be provided to Student under § 504. (<u>See</u>, <u>e.g.</u>, Opp. at 4.) This Court has previously held that self-serving statements in an opposition to a summary judgment motion cannot create a genuine issue of material fact for trial or constitute evidence. <u>See</u> <u>Motoyama v. Hawaii, Dept. of Transp.</u>, 864 F.Supp.2d 965, 977 (D. Haw. 2012) (citing <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1061 (9th Cir. 2002) (explaining that uncorroborated allegations and "self-serving testimony" do not create a genuine issue of material fact); <u>Singh v. INS</u>, 213 F.3d 1050, 1054 n. 8 (9th Cir. 2000) (statements in motions are not evidence and therefore are not entitled to evidentiary weight)); <u>see</u> <u>also</u> <u>FTC v. Publ'g Clearing House, Inc.</u>, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."). It therefore appears that Plaintiffs have failed to create a genuine issue of material fact as to whether Defendants violated § 504 by failing to provide certain "reasonable accommodations."

As to the second claim, it appears that Student is receiving certain special education services including 1:1

instruction through a § 504 plan.[20] While Plaintiffs argued at the Nov. 10 hearing that Student's current § 504 plan does not provide him a FAPE, Plaintiffs have not presented any declarations, affidavits, or other evidence showing the alleged deficiencies with the § 504 plan. In the absence of any other evidence in the record, it therefore appears that Plaintiffs have not created a genuine issue of material fact regarding their claim that Defendants violated § 504 by failing to design and implement an education plan or program that provides Student a FAPE.

For these reasons, the Court finds that Plaintiffs have failed to create a genuine issue of material fact as to whether Student was denied the benefits of HTA solely by reason of his disability (third element of § 504 claim). Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiffs' claims under § 504 of the Rehabilitation Act and Title II of the ADA.

### 2. Claims Under Hawaii Anti-Discrimination and Public Charter School Laws

Plaintiffs also assert claims under Hawaii anti-discrimination and public charter school laws, specifically, H.R.S. § 302A-436, Chapter 302D, § 368-1.5, and § 489-3.[21]

---

[20] See footnote 8 supra.

[21] Plaintiffs' Third Amended Complaint alleges a violation of
(continued...)

29

H.R.S. § 302A-436 generally provides that the DOE "shall establish and administer instruction, special facilities, and special services for the education, therapy, and training of exceptional children, and provide in connection therewith corrective therapy, together with academic, occupational, and related training." Id. § 302A-436(a).

Chapter 302D of the H.R.S. governs Hawaii public charter schools. Of relevance to this case, H.R.S. § 302D-30 states that the DOE

> shall be responsible for the provision of a [FAPE]. Any charter school that enrolls special education students or identifies one of its students as eligible for special education shall be responsible for providing the educational and related services required by a student's individual education program. The programs and services for the student shall be determined collaboratively by the student's individualized education program team, which includes the student's parents or legal guardians.
>
> If the charter school is unable to provide all of the required services, then the department shall provide the student with services as determined by the student's individualized educational program team.
>
> Id. § 302D-30(b).[22]

_____

[21](...continued)
H.R.S. "§ 302D" and "§ 489." (See Third Am. Compl. ¶¶ 1 & 28.) Because there is no section 302D or 489 of the H.R.S., the Court construes the Third Amended Complaint as referring to Chapter 302D and § 489-3 of the H.R.S., respectively.

[22]The Court notes that Parent revoked her consent to IDEA
(continued...)

H.R.S. § 368-1.5 is the state law analogue of § 504 of the Rehabilitation Act. The language of § 368-1.5 is materially identical to § 504: "No otherwise qualified individual in the State shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination by state agencies, or under any program or activity receiving state financial assistance." H.R.S. § 368-1.5(a).

Similar to Title II of the ADA, H.R.S. § 489-3 prohibits discrimination on the basis of disability in public accommodations in Hawaii: "Unfair discriminatory practices that deny, or attempt to deny, a person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation on the basis of . . . disability are prohibited." Id.

As shown, these state statutes are substantively similar to § 504 of the Rehabilitation Act and Title II of the ADA, and seem to provide the same rights and obligations as the federal statutes. It therefore appears that the analysis regarding Plaintiffs' state-law claims is the same as the analysis regarding Plaintiffs' § 504 and ADA Title II claims. Because the Court has already determined that Defendants' motion

---

[22/](...continued) services on June 15, 2012, and again on the eve of the October 21, 2014 meeting.

for summary judgment should be granted as to Plaintiffs' § 504 and ADA Title II claims, see section II.B.1. supra, with Plaintiffs providing no evidence to the contrary, the Court must conclude that Defendants' motion for summary judgment should be granted as to Plaintiffs' claims under the provisions of the H.R.S. discussed above.

### 3. Constitutional Claims

Finally, Plaintiffs assert claims under the First, Fifth, and Fourteenth Amendments to the U.S. Constitution. (Third Am. Compl. ¶ 1.) These claims are frivolous. Plaintiffs present no evidence that Defendants infringed on their First Amendment rights, such as the "right to speak freely." See Wooley v. Maynard, 430 U.S. 705, 714 (1977). As to their Fifth and Fourteenth Amendment due process claims, Plaintiffs do not explain what process was due to them that they did not receive. See Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982). Rather, it appears that Plaintiffs received the protections provided by these amendments through the five-day Impartial Due Process Hearing and May 21, 2012 AHO decision.

Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiffs' constitutional claims.

### CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint for

Declaratory and Injunctive Relief or, in the Alternative, Motion for Summary Judgment.

The Court finds that Plaintiffs' Third Amended Complaint is moot. Alternatively, the Court finds that the claims in the Third Amended Complaint are ripe for summary adjudication. Accordingly, this case is dismissed with prejudice. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, November 20, 2014.



_____
Alan C. Kay
Senior United States District Judge

<u>Jason E. et al. v. Department of Education, State of Hawaii et al.</u>, Civ. No. 12-00354 ACK-BMK: ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT